UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUSTIN ARTHUR MARSHALL,

                   Petitioner,

                                       CIVIL NO. 2:14-11878

v.                                 HONORABLE SEAN F. COX

                                       UNITED STATES DISTRICT COURT

RANDALL HAAS,

                   Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

Dustin Arthur Marshall, ("Petitioner"), presently incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed through his attorney Frank D. Eaman, petitioner challenges his conviction for assault with intent to commit murder, Mich. Comp. Laws, § 750.83, possession of a firearm by a felon, Mich. Comp. Laws, § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws, § 750.227b. He was sentenced as a fourth-offense habitual offender, Mich. Comp. Laws, § 769.12, to concurrent prison terms of 35 to 60 years for the assault and the felon-in-possession convictions and a consecutive two-year term of imprisonment for the felony-firearm conviction. For the reasons stated below, the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

### I. Background

Petitioner was convicted of the above offenses following a jury trial in the Jackson County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from

1

the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arose from the nonfatal shooting of Jamaal Hunt during the early morning hours of July 5, 2009, in Jackson, Michigan.

*People v. Marshall*, 298 Mich. App. 607, 610, 830 N.W.2d 414, 418 (2012), *judgment vacated in part, appeal denied in part*, 493 Mich. 1020, 829 N.W.2d 876 (2013).

This Court supplements the findings made by the Michigan Court of Appeals with additional evidence found in the record.

Lasonia Ann Wilks testified that on the 4th of July she went to her sister's house with Lakeyda Powell. At the point that she was to be taken home, her sister went to another car to speak to someone, leaving her sitting in her sister's car. Wilks testified that she saw a confrontation occur between two men on the street, one of whom she believed to be petitioner. Wilks testified that she believed it was petitioner because she had seen him earlier that day at the 915 house on the stoop. (Tr. 1/25/2010, pp. 111-113, 116). Wilks then testified to the events following the shooting as follows:

> A [Ms. Wilks]: I don't -- I mean, I-- that's what I told the dispatcher when they called, I said, "it was the fuckin white boy."
>
> Q [Prosecutor]:Who was over at 915, correct?
>
> A Correct.
> *****************************************************************
> Q Do you recall -- let me rephrase this, when you were in the car and you saw the person that you believed to be Dustin Marshall shoot Jamaal, did you actually see the gun?
>
> A I seen a withdraw from a waist and I seen fire.

2

Q From -- and who was withdrawing from his waist?

A The person that shot Jamaal.

Q Is that Dustin Marshall?

A I guess, yeah.

Q You guess?  You've identified him as the person you believe to be the shooter.

A Right.

Q Is that the person you saw pull something out of his waist?

A I believe so.

Q And how many times did you hear fire?

A Three or four.

Q Did you see a weapon in Mr. Hunt's hand?

A No.

Q When -- you stated initially that you saw him walk by when you were first in the car, was that Dustin Marshall or was that Jamaal Hunt?

A That was Jamaal.

Q And he was walking to the area of 915?

A Yes.

Q It was that house that he was shot in front of?

A Yes.

Q Did you see anything in his hands, like a firearm or a knife or any type of weapon in his -- in his hands at that time?

A He didn't have anything in his hands.

3

(*Id.* at 119-122).

The trial court found that portions of conversations captured by a body microphone were admissible under the "excited utterance" exception of the hearsay rule, allowing those portions to be entered into evidence following the testimony of Officer Wesley Stanton.

Officer Wesley Stanton testified that he spoke with Lasonia Wilks within minutes of the shooting.  Stanton testified to the events as follows:

> She was just frantic.  She was--she was saying, "My brother got shot." I kept asking who shot him, she kept telling me, "The white boy." Yelling, the white boy that stays a couple houses down, she pointed in the general direction, that being 915 Francis Street. She stated -- I asked her who got shot, I believe she stated that it was Jamaal, her brother.

(*Id.* at 214).

Stanton later testified to the following events that transpired when he re-initiated contact with Wilks after securing the crime scene:

> [Stanton] I pulled her -- or she came out of 919 Francis Street and I spoke with her by herself in the driveway. I asked her basically who -- who shot her brother, Jamaal. She then told me Dustin Marshall.
>
> Q [Prosecutor] Would you please tell the jury her degree of -- her degree of certainty.
>
> A: [Stanton] She said it very frank, very certain.
>
> Q Did she appear confused?
>
> A No.
>
> Q Did she appear to think about which person she was going to pick?
>
> A Not at all.

(Tr. 1/25/2010, pp. 214, 226).

4

When asked about the events leading up to the shooting and the witness's familiarity with

the petitioner, Stanton testified that Wilks told him the following:

> A [Officer Stanton]  I believe I asked her at some point in the conversation if she was familiar with Mr. Marshall and she kept saying, "Yeah, he's the white boy that stays right there," pointing to 915 Francis Street.  I said what happened on this evening, she told me that she was in her – or in a vehicle in the driveway at 919, she said she was in the back seat, she climbed over to the front seat.  She said once she got to the front seat she heard a couple subjects having words and I asked her -- I think I asked her where Dustin was and she said that he was on the porch of 915 Francis Street.
>
> Q [Prosecutor] What else did she tell you?
>
> A She -- she said that her brother, Jamaal, went over to the -- where the two people were having words at and then she said Dustin came off the porch onto the yard. ·She said it happened right in the yard of 915 Francis Street.  She said once he got there and Dustin came off the porch she said Dustin started shooting Jamaal.  She said that she seen – she heard the shots and she seen the muzzle flashes, or she – I think she called it fire, and then she saw Jamaal fall to the ground.
>
> I asked -- I asked her where Dustin got the gun from and she said, "Right here," pointing to her waistband.  Then I asked her how close Dustin was to Jamaal and she said -- I think she said, "About this close," and we were standing about this far away, about a foot to two foot away from each other.

(*Id.* at 227-228).

The corresponding audio tape, recorded within minutes of the shooting by Officer Stanton

at the time of his conversation with Wilks, was entered into evidence and is as follows:

> OFFICER STANTON: Where are they?  They go to the hospital?
>
> UNIDENTIFIED SPEAKER: I don't know where they went. Everybody –
>
> OFFICER STANTON: Where they going?
>
> UNIDENTIFIED SPEAKER: (Inaudible).

OFFICER STANTON: What's going on -- (inaudible).

UNIDENTIFIED SPEAKER: My brother just got shot -- (undecipherable) --hospital.

OFFICER STANTON: Who's your brother?

UNIDENTIFIED SPEAKER: (Undecipherable). I'm going.  I'm leaving.  I'm leaving.

OFFICER STANTON: (Undecipherable).

UNIDENTIFIED SPEAKER: I'm leaving.

OFFICER STANTON Where'd he get shot at?

UNIDENTIFIED SPEAKER: (Undecipherable). That fucking white

boy shot him. (Undecipherable) -- he next door.

OFFICER STANTON: Who's that? Tell me his name.

UNIDENTIFIED SPEAKER: I ain't saying a name, a fucking white boy that lives next door.  (Undecipherable) -- my fucking face. (Undecipherable).

(*Id.* at 253-254).

**************************************************************

UNIDENTIFIED SPEAKER: He don't talk to me. His name?

UNIDENTIFIED SPEAKER: Dustin Marshall.

OFFICER STANTON: Okay. Is he in there right now?

UNIDENTIFIED SPEAKER: Pardon?

OFFICER STANTON: Is he in there now?

UNIDENTIFIED SPEAKER: I think --(undecipherable).

OFFICER STANTON: What'd he leave in?

UNIDENTIFIED SPEAKER: I don't know.

OFFICER STANTON: (Undecipherable) . Be advised the suspect's going to be Dustin Marshall, white male -- (undecipherable).

(*Id.* at 256).

Petitioner in his habeas petition submits a different scenario and witnesses not called at trial, in support of his factual basis, claiming that an altercation occurred and that he fired in self-defense.

The trial court held an evidentiary hearing over a period of three days on petitioner's ineffective assistance of counsel claims pursuant to *People v. Ginther*, 390 Mich. 436, 443; 212 N.W.2d 922 (1973) and on January 27, 2012, Judge Schmucker's eventual successor, Judge Thomas Wilson, denied petitioner's motion for a new trial.

The Michigan Court of Appeals affirmed petitioner's conviction. *People v. Marshall,* 298 Mich. App. 607, 830 N.W.2d 414 (2012).  The Michigan Supreme Court reversed in part the Court of Appeals and found that there was misconduct on the part of the prosecutor at petitioner's trial, but found that it did not rise to the level of plain error to justify reversal of the conviction. *People v Marshall*, 493 Mich. 1020, 829 N.W.2d 876 (2013); *reconsideration denied* 495 Mich. 868, 843 N.W.2d 126 (2013).

Petitioner now seeks a writ of habeas corpus on the following grounds:

I.  The petitioner, who was not guilty of the life-felony he was charged with, received ineffective assistance of counsel, in violation of his rights under the Sixth Amendment of the United States Constitution.

II. The petitioner was denied his right to a fair trial, pursuant to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution because of the pervasive misconduct of the prosecutor.

III. The trial court deprived the petitioner of Due Process of Law under the Fifth Amendment, his right to assistance of counsel under the Sixth Amendment, and his

7

right to a fair and impartial jury under the Sixth Amendment when the court failed to make a record of juror communications and failed to inquire into known extraneous influence on the jurors.

IV. The decisions of the trial court, the Michigan Court of Appeals, and Supreme Court demonstrate a complete malfunction of the state court system and a failure to protect the basic federal rights of the petitioner to effective assistance of counsel, to a fair trial by an impartial jury, and to due process of law, as guaranteed by the United States Constitution.[1]

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the

state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

application" occurs when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ

simply because that court concludes in its independent judgment that the relevant state-court

---

[1]Petitioner's fourth "claim" is not an independent claim for relief but rather an argument in support of his allegation that the state courts improperly denied him relief on his first three claims.

8

decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)(quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Habeas relief is not appropriate unless each ground which supported the state court's decision is examined and found to be unreasonable under the AEDPA. *See Wetzel v. Lambert*, 132 S. Ct. 1195, 1199 (2012).

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 562 U.S. at 102. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no

possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979)(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. In reviewing petitioner's claims, this Court must remember that under the federal constitution, petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

### III. Discussion

#### A. Claim # 1. The ineffective assistance of counsel claims.

Petitioner alleges many grounds of ineffective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged

10

action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Therefore, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case

11

involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting

*Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356,

371 (2010)).

> Because of this doubly deferential standard, the Supreme Court has indicated that:
>
> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.
>
> *Harrington v. Richter*, 562 U.S. at 105.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt,

but must also affirmatively entertain the range of possible reasons that counsel may have had for

proceeding as he or she did. *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011).

Petitioner alleges that trial counsel Patrick Cole was ineffective by failing to prepare for

trial, citing numerous instances in which his representation was deficient. The trial court held a

three day evidentiary hearing, examining the claims of ineffective assistance of counsel now

contained in petitioner's habeas petition, and found the claims to be meritless.

With regards to petitioner's allegation that trial counsel was deficient for failing to run a

self-defense claim, to investigate, hire an investigator and call witnesses, the trial court held an

evidentiary hearing and rejected petitioner's claim as follows:

> Trial counsel testified that he believed, based on the evidence, self-defense was Defendant's best trial strategy and discussed this with Defendant. However, defendant responded that he "didn't want to testify, and he didn't want to have that defense." Additionally, defendant could not provide counsel with any names of individuals at the scene nor would he permit counsel to hire an investigator or expert. Although appellate counsel secured additional witnesses, he did so through the use of a private investigator. Precluded from his choice of defense, trial counsel chose to run an insufficient-evidence/reasonable-doubt defense. Trial counsel was

12

not ineffective for failing to investigate a defense that Defendant refused to let him run.

*People v. Marshall*, No. 09-005490-FC, *1-2. (Jackson County Circuit Court, March 19, 2013). (internal citations omitted).

There was no indication that petitioner ever informed counsel about witnesses to be called or a desire to raise a claim of self-defense. The trial judge, in rejecting petitioner's ineffective assistance of counsel claim, found trial counsel's version of events to be more credible than petitioner's version of events. Although the issue of ineffective assistance of counsel presents a mixed question of law and fact, any underlying historical facts found by the state courts are presumed correct. *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996). The presumption of correctness also "applies to implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *Carey v. Myers*, 74 F.App'x. 445, 448 (6th Cir. 2003)(citing *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996)).

The Michigan Court of Appeals, in referencing the *Ginter* Hearing, found that petitioner refused to cooperate when his trial counsel suggested raising a self-defense claim.

> At the *Ginther* hearing, defendant and defense counsel presented conflicting accounts of their pretrial discussions of the case and possible defense strategies. According to defense counsel, defendant told him that he shot the victim in self-defense during a struggle with the victim over the gun. Counsel, who was retained, testified that he expressed a desire to hire a private investigator and a medical expert to explore the self-defense theory, but defendant did not want to spend any more money and he refused to provide the names of any witnesses or allow counsel to use that defense. Counsel explained that he therefore elected to pursue a strategy of attacking the sufficiency of the evidence and establishing reasonable doubt. According to counsel, even after he informed defendant that a "reasonable doubt" defense only had a 20 to 30 percent chance of success, defendant was still convinced that he could "beat" the charge because he had been acquitted of a previous shooting using that strategy. Conversely, defendant testified that he told defense counsel that the shooting occurred during a struggle between himself and the victim, but denied telling defense counsel what defense theory to pursue or refusing to allow counsel to pursue a defense of self-defense. According

13

to defendant, defense counsel told him that, in light of the preliminary examination testimony, no one could identify defendant as having been at the scene of the crime, so he "should go with I wasn't there."

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Although defendant's witnesses at the *Ginther* hearing testified in support of a self-defense theory, defense counsel's testimony indicates that he wanted to pursue a self-defense claim but defendant did not want to do so, would not provide the names of witnesses, and would not permit counsel to hire a private investigator to explore that defense. Crediting defense counsel's testimony that defendant refused to cooperate in presenting a self-defense claim, counsel cannot be faulted for not pursuing that defense. Without defendant's cooperation, it would have been implausible to present that defense at trial. Further, considering the conflicting and widely varied testimony elicited at the preliminary examination and at trial, it was not unreasonable for counsel to pursue a "reasonable doubt" strategy. Indeed, although eyewitness Lasonia Wilks identified defendant as the person involved in the altercation with the victim, the victim himself maintained that defendant was not present at the scene. Accordingly, giving deference to the trial court's finding that defense counsel was credible, we find no error in the trial court's determination that defense counsel was not ineffective as a result of his choice of defense strategies.

*People v. Marshall*, 298 Mich. App. at 612–14 (internal citations omitted).

Because the trial court and the Michigan Court of Appeals both chose to credit counsel's version of events in rejecting petitioner's ineffective assistance of counsel claim, this Court is bound by that factual determination, including the implicit factual finding that petitioner never informed his attorney about the alleged witnesses that he claimed should have been called to support a claim of self-defense.

At the evidentiary hearing, Cole claimed he received no information about the case from Charles Perlos, Marshall's previous lawyer, except picking up the file from Perlos. (Tr. 1/14/2011, p. 25). He claimed that there were no notes from Perlos' interviews in the file. (*Id.*, 26) Cole was initially retained by Marshall's mother to replace Charles Perlos. (*Id.*, p. 12) Cole confirmed that he received Marshall's file from Perlos when he took over the case, and the file included police reports and a couple of photographs of the scene, which he lost. (*Id.*, pp. 10, 18).

14

Perlos contradicted Cole, and testified that he had turned over helpful information to Cole. Cole claimed that his selected strategy of insufficient evidence to sustain a conviction was consistent with what Marshall wanted since Marshall did not feel comfortable speaking in court and would not allow Cole to raise a self-defense claim. (*Id.*, pp. 38-39). Cole also claimed that this strategy was chosen by Marshall, since Marshall was familiar with the system because of a prior trial in Jackson County. (*Id.*, pp. 39- 40).

Trial counsel's decision to run a reasonable–doubt defense was not deficient. Not only did petitioner himself wish this defense (having previously succeeded with it in the past in a similar case), but this defense made sense in the present case where petitioner would not provide names of witnesses and almost all of the prosecutor's witnesses were recanting. The only person who testified that petitioner shot Hunt, Lasonya Wilks, testified that she had not only been drinking all day, but, in the end, was not positive that the shooter was petitioner. (Tr. 1/25/2010, pp. 146-148). Although trial counsel did not prefer to run a reasonable doubt strategy, such a strategy would not be unreasonable where counsel could focus on attacking the weaknesses in the prosecutor's case, which would have been completely ignored by running a self-defense claim. Given that petitioner successfully used such an approach years earlier when he was acquitted in Jackson County of assault with intent to commit murder and felony firearm despite not calling any defense witnesses (Tr. April 29, 2011, p. 43), that his trial attorney in the present case knew about the 2003 case (Tr. 1/14/2011, p. 39), and considering the problems with the prosecutor's case and that this approach had succeeded in the past, counsel's decision to run the same defense, when precluded by petitioner from running a self-defense claim, was not unreasonable.

Petitioner's trial attorney testified that petitioner wanted to run a reasonable doubt defense.

Cole cautioned petitioner that there was 20-30 percent chance of success with this defense, but petitioner believed that he would succeed again with this defense and refused to allow his counsel to pursue a self-defense claim. (*Id.* at 39-42). "Counsel's performance is not deficient when counsel follows a client's instructions." *Owens v. Guida*, 549 F.3d 399, 402 (6th Cir. 2008). Although petitioner distinguishes *Owens*, claiming that there was not a lack of cooperation leading to the choice of an insufficient evidence defense, the record reflects that petitioner refused to provide names of witnesses and refused to consider hiring an investigator to make out a claim of self-defense. The trial court found that trial counsel, not petitioner, was telling the truth on this point, being that petitioner successfully used this approach approximately eight years earlier. Trial counsel was not ineffective for failing to run a claim of self-defense claim, call witnesses, hire an investigator or perform any other acts connected to running such a defense when petitioner refused to cooperate and insisted on pursuing a reasonable doubt defense.

Petitioner alleges that trial counsel was ineffective by failing to produce pictures and/or by losing pictures taken at the crime scene. Under *Strickland*, a court must presume that decisions by counsel as to whether to call or question witnesses or present evidence are matters of trial strategy. *See Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). Cole conceded that he lost a couple pictures taken at the crime scene. The pictures produced by Perlos showed a bush that Perlos claimed would have obstructed the view of the main prosecutorial witness. Following the evidentiary hearing, the trial court issued and order finding that the pictures of the bush were "indecipherable to the Court. It is unclear if there is even a bush in any of the photos. Defendant has failed to demonstrate that a bush existed let alone if admitted the bush would discredit the testimony of the eyewitness to the point of producing a different outcome at trial." *Marshall*, 09-

16

005490-FC *2. Because this evidence was not exculpatory, petitioner was not prejudiced by counsel's failure to present pictures taken at the crime scene. A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F.3d 520, 527 (6th Cir. 2004)(internal quotation omitted).

Petitioner alleges that trial counsel was ineffective by failing to file a motion to suppress a camera and a photograph of petitioner wearing a shirt that matched the description of the shirt worn by the shooter, claiming that the seizure was beyond the scope of the warrant.

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excusable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

The Michigan Court of Appeals rejected petitioner's suppression claim as follows:

Defendant next argues that defense counsel was ineffective because he failed to move to suppress a photograph of defendant wearing a shirt that matched the description of the shirt worn by the shooter. Defendant argues that the photograph was unlawfully seized because the camera from which it was obtained was not an object within the scope of the search warrant that the police executed at the place where defendant was found. First, we disagree with defendant's contention that the camera was beyond the scope of the search warrant. The warrant broadly authorized the seizure of "any and all evidence related to the shooting of Jamal [sic] Hunt...." A camera containing a photograph of defendant wearing clothing that matched the description of the shooter's clothing was evidence linking defendant to the offense and, therefore, within the scope of the warrant. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." Further, defense counsel testified that he did not object to the photo because the shirt that defendant was wearing looked like a common shirt that could be found in many closets. The trial court agreed that even if a motion to suppress had been successful, there was no reasonable probability that the outcome of the trial would have been different if the photograph had been excluded. Thus, defendant has not demonstrated that he was prejudiced by counsel's failure to file

17

a motion to suppress.

*People v. Marshall*, 298 Mich. App. at 615 (internal citation omitted).

Petitioner is not entitled to relief on this claim for two reasons. First, petitioner failed to show that the camera containing a photograph of petitioner was outside the scope of the warrant, thus, he failed to show that he had a meritorious Fourth Amendment claim. Secondly, even if the photograph of petitioner wearing what looked like a common shirt had been suppressed, the outcome of the trial would not have been different. Petitioner was not prejudiced by counsel's failure to file a motion to suppress.

Petitioner next alleges that trial counsel was ineffective for failing to file a motion in limine to keep out petitioner's record if he testified. Trial counsel was not ineffective not to suppress petitioner's prior convictions because petitioner did not testify at trial. See *Greene v. Lafler*, 447 F. Supp. 2d 780, 794 (E.D. Mich. 2006)(Defendant in robbery prosecution was not denied effective assistance of counsel due to trial counsel's failure to effectively argue for exclusion of evidence defendant's prior conviction for unlawfully driving away automobile (UDAA), even if defendant might have testified if conviction had been suppressed, where defendant did not testify, there was no mention of prior conviction at trial, and counsel was able to adequately present defense of misidentification without defendant's testimony).

Petitioner next claims that trial counsel was ineffective for failing to object to the admission of the victim's bloody clothing or evidence that bullets recovered during a search where petitioner was found matched the shell casings recovered at the crime scene. Petitioner also claims that counsel should have objected to the prosecutor's references to this evidence in closing argument. The Michigan Court of Appeals rejected petitioner's claim, finding this evidence to be relevant and

18

admissible under Michigan law. *Marshall,* 298 Mich. App. at 616-18.

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Because the Michigan Court of Appeals determined that this evidence was admissible under Michigan law, this Court must defer to that determination in resolving petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 F.App'x. 431, 437-38 (6th Cir. 2008); *Adams v. Smith*, 280 F. Supp. 2d 704, 721 (E.D. Mich. 2003). The failure to object to relevant and admissible evidence is not ineffective assistance of counsel. *See Alder v. Burt,* 240 F. Supp. 2d 651, 673 (E.D. Mich. 2003). Petitioner's claim is meritless.

Petitioner further alleges that trial counsel was ineffective by failing to enter the lab reports. The reports indicated that the bullets found at petitioner's home and at the crime scene were a common bullet and were inconclusive as to whether the bullets found at petitioner's home were the same bullets utilized in the shooting. Although not admitted into evidence, admission of these reports would not have exonerated petitioner. Petitioner merely speculates that there would have been favorable ballistics evidence to support his defense. However, petitioner would have to show that the results of the investigation he says his attorney should have done would create enough of a reasonable doubt that the jury would have come in with a verdict of not guilty. Petitioner merely raises the possibility that it might have done so, and that is not enough to show prejudice for purposes of establishing an ineffective assistance of counsel claim. *See e.g. Williams v. Carter,* 85 F. Supp. 2d 837, 840 (N.D. Ill. 1999). Trial counsel was not ineffective by not entering into evidence the lab reports which did not exonerate petitioner of the shooting.

19

Petitioner alleges that "Defense counsel failed to file any motions, briefs, or request for jury instructions, and failed to move to suppress evidence that was illegally seized." At the evidentiary hearing, Cole testified that his philosophy is not to object unless the evidence hurts. (Tr. 1/14/2011, p. 59). This court will not second guess a matter of trial strategy. The other claims are a matter of trial strategy and the evidence that petitioner claims should have been suppressed was ruled admissible by the trial court. In regards to the jury instruction claim, petitioner does not indicate what was wrong with giving the standard jury instructions that would require that trial counsel ask for something different. These claims are also meritless.

Petitioner next contends that trial counsel was ineffective for failing to object to the prosecutorial misconduct that he alleges in Claim # 2, *infra*.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001). Because the Court determines that the prosecutor's comments and questions did not deprive the petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *See Slagle v. Bagley*, 457 F.3d 501, 528 (6th Cir. 2006).

Petitioner lastly claims that the cumulative nature of the errors deprived him of the effective assistance of counsel. Because the individual claims of ineffectiveness alleged by petitioner are all essentially meritless or were of slight importance, petitioner cannot show that the cumulative errors of his counsel amounted to ineffective assistance of counsel. *Seymour v. Walker*, 224 F.3d 542, 557 (6thCir. 2000). Petitioner is not entitled to relief on his first claim.

20

**B. Claim # 2.  The prosecutorial misconduct claims.**

Petitioner next contends that the prosecutor deprived him of a fair trial because of prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45.  In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 562 U.S. at 103).

Petitioner argues that the prosecutor engaged in misconduct when she argued that the number of persons present in the court was somehow intimidating the witnesses and when she elicited testimony that children were living on the block where the shooting occurred and then used that fact to argue that this showed that petitioner had the intent to kill.

The Michigan Court of Appeals, after noting that petitioner's prosecutorial misconduct claims were unpreserved, rejected petitioner's claims under a plain error review, finding that the

21

prosecutor's comments were appropriate. *People v. Marshall,* 298 Mich. App. at 619-22.  The Michigan Supreme Court then vacated the Michigan Court of Appeals' opinion in part, concluding that there was misconduct on the part of the prosecutor at petitioner's trial, but held that it did not rise to the level of plain error to justify reversal of the conviction. *People v Marshall*, 493 Mich. 1020.

In *Fleming v. Metrish,* 556 F.3d 520, 532 (6th Cir. 2009), a panel of the Sixth Circuit held that the AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim.  In a subsequent decision, the Sixth Circuit held that that plain-error review is not equivalent to adjudication on the merits, so as to trigger AEDPA deference. *See Frazier v. Jenkins*, 770 F.3d 485, 496 n. 5 (6th Cir. 2014).  The Sixth Circuit noted that "the approaches of *Fleming* and *Frazier* are in direct conflict." *Trimble v. Bobby*, 804 F.3d 767, 777 (6th Cir. 2015).  When confronted by conflicting holdings of the Sixth Circuit, this Court must follow the earlier panel's holding until it is overruled by the United States Supreme Court or by the Sixth Circuit sitting *en banc*. *See Darrah v. City of Oak Park,* 255 F.3d 301, 310 (6th Cir. 2001).  This Court believes that the AEDPA's deferential standard of review applies to petitioner's prosecutorial misconduct claims, even though they were reviewed only for plain error.  Although the Michigan Supreme Court concluded that the prosecutor's comments were improper, this Court need not defer to the Michigan Supreme Court's pro-petitioner resolution because the AEDPA's standard of review is a "precondition to the grant of habeas relief [ ], not an entitlement to it." *See Daniels v. Lafler*, 501 F.3d 735, 740 (6th Cir. 2007).

Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's

deliberations." *Washington v. Hofbauer,* 228 F.3d 689, 700 (6th Cir. 2000)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974)). Although it is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000).

This Court agrees with the Michigan Court of Appeals' determination that the prosecutor's remarks were not improper but were based on reasonable inferences from the evidence. Even if the prosecutor's comments were improper, petitioner is not entitled to relief because the remarks were relatively isolated, were not extensive, and were only a small part of a closing argument that focused heavily on summarizing the evidence presented at trial. *Byrd v. Collins*, 209 F.3d at 532. When combined with the instruction from the trial judge that the closing arguments were not evidence (Tr. 1/27/10, p. 61), the prosecutor's isolated comments did not render the entire trial fundamentally unfair. *Id.* at 533. Petitioner is not entitled to relief on his prosecutorial misconduct claim.

### C.  Claim # 3.  The jury issues.

Petitioner lastly raises several claims regarding the jury.

Petitioner first contends that he was deprived of the right to the assistance of counsel at critical stages of the proceedings when the trial judge reviewed and possibly responded to several juror requests to review certain evidence without petitioner's counsel being present.

Although petitioner does not state the precise nature of the juror communications in his brief, the Michigan Court of Appeals described them in their opinion:

> The lower court file contains four handwritten notes stapled to the verdict form. The notes appear to be juror notes, questions, and requests. The notes state:

[Note 1] Body mike

dash camera

hospital dashcam

911 call

[Note 2] Could we back it up to the door knock?

[Note 3] Could we see the video of Dr. [Rami] Khoury?

[Note 4] We would like to watch the videotape of Ofc. [Steven] Scarpino after lunch[.]

As previously indicated, while the notes themselves are a matter of record, there is no indication in the record that the jury ever conveyed these notes to the trial court or that there were any communications between the court and the jury concerning the notes.

*People v. Marshall*, 298 Mich. App. at 623.

The U.S. Supreme Court has clearly established that the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice. *United States v. Cronic*, 466 U.S. 648, 659 (1984). The existence of certain structural defects in a trial, such as the deprivation of the right to counsel, requires automatic reversal of the conviction because it infects the entire trial process. *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993). The U.S. Supreme Court has routinely found constitutional error without any specific showing of prejudice to a defendant when counsel is either totally absent, or prevented from assisting the accused during a critical stage of the proceedings. *Cronic*, 466 U.S. at 659, n.25; *United States v. Minsky*, 963 F.2d 870, 874 (6th Cir. 1992).

The Michigan Court of Appeals did not unreasonably apply clearly established Supreme Court precedent in rejecting petitioner's claim. Any possible communications between the judge

and the jurors concerning their request for certain evidence was not a critical stage of the prosecution for which counsel's presence was required. *Bourne v. Curtin,* 666 F.3d 411, 413-14 (6th Cir. 2012)(*ex parte* communication between judge and jury, in which judge denied jury's request to rehear trial testimony, was not *per se* harmful, in the context of defendant's claim that communication violated his right to counsel or his right to be personally present at all critical stages of the trial).  Likewise, the reading back of testimony or the giving of evidence that has already been admitted at trial to the jurors is not a critical stage of the prosecution, for Sixth Amendment purposes. *See Shohatee v. Jackson*, 257 F.App'x. 968, 970 (6th Cir. 2007)(because playback of testimony not "critical stage" of criminal prosecution, state courts did not act contrary to "clearly established federal law" in failing to apply the *Cronic* presumption where counsel was not present when tapes of trial testimony played back to jury); *Dallago v. U.S.*, 427 F.2d 546, 553 (D.C. Cir. 1969)(mechanical operation of transmittal to the jury of items fully in evidence is a "ministerial activity" that is not a critical stage of the trial for Sixth Amendment purposes).  Because counsel was not absent from any critical stage of petitioner's trial, the Michigan Court of Appeals did not act contrary to clearly established Supreme Court precedent by rejecting petitioner's claim.

Petitioner next contends that the jurors were exposed to an extraneous influence when several spectators in the hallway urged the jurors to "fry him," referring to petitioner.

The Michigan Court of Appeals rejected this claim as follows:

Defendant also argues that reversal is required because the trial court failed to conduct an evidentiary hearing to determine the effect of the jurors' exposure to extraneous comments. The record discloses that the trial court addressed this matter on the record after being informed that some spectators might have yelled something in a hallway where some jurors were present. The trial court determined that the comments were made by spectators associated with a different trial and did not involve a "tampering issue" or "threatening a juror." Therefore, nothing further needed to be done. Although defendant now argues that the trial court should have

25

held a hearing to determine whether the jurors' exposure to the extraneous comments affected their ability to be fair and impartial, defense counsel affirmatively approved the trial court's handling of the situation at trial. Therefore, counsel waived any error. A waiver extinguishes any error. Accordingly, there is no error to review.

*People v. Marshall*, 298 Mich. App. at 625 (internal citations omitted).

In *Remmer v. United States*, 347 U.S. 227, 230 (1954), the Supreme Court held that a trial court confronted with an allegation of external tampering or contact with a juror during a trial about a matter pending before the jury "should determine the circumstances, the impact [of the contact] upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." *Remmer* placed the burden on the prosecution to rebut the presumption that an extrinsic influence upon the jury prejudiced the defense. However, in *Smith v. Phillips*, 455 U.S. 209 (1982), the Supreme Court subsequently stated, "This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Id.* at 215. In the aftermath of *Smith v. Phillips,* the Sixth Circuit "has consistently held that *Smith v. Phillips* reinterpreted *Remmer* to shift the burden of showing bias to the defendant rather than placing a heavy burden on the government to show that an unauthorized contact was harmless." *U.S. v. Walker*, 1 F.3d 423, 431 (6th Cir. 1993)(collecting cases). A *Remmer* hearing is required to be conducted "only when there is a colorable claim of extraneous information that 'presents a likelihood of affecting the verdict.'" *United States v. Gonzales*, 227 F.3d 520, 527 (6th Cir.2000)(quoting *United States v. Frost*, 125 F.3d 346, 377 (6th Cir.1997)).

To be entitled to a *Remmer* hearing, a defendant "must do more than simply raise the possibility of bias." *Jackson v. Bradshaw*, 681 F.3d 753, 766 (6th Cir. 2012). A defendant "must make a colorable claim of extraneous influence," that is, "one derived from specific knowledge

26

about or a relationship with either the parties or their witnesses." *Id*.  "Examples of extraneous influences include 'prior business dealings with the defendant, applying to work for the local district attorney, conducting an [out-of-court] experiment, and discussing the trial with an employee.'" *Id.* (internal quotation omitted).  A trial court "should consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source when determining whether a hearing is required." *Kowalak v. Scutt*, 712 F. Supp. 2d 657, 692 (E.D. Mich. 2010)(quoting *Sims v. Rowland*, 414 F.3d 1148, 1155 (9th Cir. 2005)(internal quotation omitted). To be entitled to a post-trial hearing on an extraneous influence claim, a defendant must "come[ ] forward with clear, strong, substantial and incontrovertible evidence that a specific, non-speculative impropriety has occurred." *Id*. (internal quotation omitted).

Moreover, "[s]ince the trial judge is in the best position to determine the nature and extent of alleged jury misconduct, his decision on the scope of proceedings necessary to discover misconduct is reviewed only for an abuse of discretion." *United States v. Rigsby,* 45 F.3d 120, 125 (6th Cir. 1995)(quoting *United States v. Shackelford*, 777 F.2d 1141, 1145 (6th Cir. 1985)).  In a habeas corpus case, a state court's findings on whether, and how, an extraneous matter affected jury deliberations "deserve[ ] a 'high measure of deference.'" *Mahoney v. Vondergritt,* 938 F.2d 1490, 1492(1st Cir. 1991)(quoting *Rushen v. Spain*, 464 U.S. 114, 120 (1983)).

In the present case, the state trial judge determined that the comments made outside the courtroom, in the hallway, referred to another defendant in a different trial and were not directed at petitioner or his jury.  Petitioner has offered no evidence to rebut the judge's finding. Petitioner's bare assertion that the jurors were tainted by the spectators' remarks in the hallway is insufficient to establish that he was entitled to a *Remmer* hearing. *See Kowalak v. Scutt*, 712 F.

27

Supp. 2d at 693.  Because petitioner has failed to show that he was entitled to a *Remmer* hearing, petitioner is unable to show that counsel was ineffective for failing to move for one. *Id.* at 702-03. In the absence of any evidence that the jury in petitioner's case was subjected to any extraneous influence, petitioner is not entitled to relief on his claim.

### IV.  Conclusion

The Court will deny the petition for a writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). The Court further concludes that petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. See Fed.R.App. P. 24(a).

**V. ORDER**

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus

is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that petitioner will be **DENIED** leave to appeal *in forma*

*pauperis.*

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: January 3, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on
January 3, 2017, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager

29